UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO: 20-127** |
| **JIMELLE PINES** | **SECTION: "S" (1)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that the **Motion to Suppress** (Rec. Doc. 21) filed by defendant, Jimmelle Pines, is **DENIED**.

### BACKROUND

Defendant, Jimmelle Pines, was indicted on November 13, 2020 with knowingly and intentionally possessing with intent to distribute one kilogram or more of heroin. In the instant motion, he seeks to suppress the evidence obtained from two searches and the statements he made in a subsequent interrogation. Details concerning the searches have been set forth in a recent order of the Magistrate Judge as follows:

> The first warrant at issue was for the search of Pines' grandmother's property on Douglas O'Neil Lane as well as the vehicles on the property. (Rec. Doc. 21-2, at 4). Agent Brandon McBee of the Tangipahoa Parish Sheriff's Office ("TPSO") Narcotics Division attested that within 48 hours of the warrant application on October 29, 2020, he had met with Lieutenant Vic Marler of the Ponchatoula Police Department ("PPD") and a confidential informant ("CI-1"). Id. McBee attested that Marler advised that CI-1 was "a proven and reliable confidential source of information" and that CI-1 had "provided information in the past which has led to many arrests and conviction as well [sic] numerous drug seizures." Id. McBee attested that CI-1 advised that "while on Douglas O'Neil Lane he observed Jimmelle PINES . . . in possession of a large quantity of heroin" and that "PINES is known to store the narcotics in one of the several inoperable cars parked on the property." Id. McBee attested that after this meeting, Marler was contacted by another confidential informant ("CI-2") "stating the same information, with the added information that

the property belongs to PINES' grandmother and he is known to keep large sums of money in her residence." Id. CI-2 "stated once PINES hides the heroin in one of the locations, he leaves the area and possibly travels to Jefferson Road in Ponchatoula to distribute the heroin." McBee added that "[t]his is a known area where PINES has been arrested in the past." Id. He attested that CI-2 further stated that "throughout the day, PINES returns back to Douglas O'Neil to retrieve more heroin." Id. McBee also attested to Pines' extensive narcotics related history with TPSO, Hammond Police Department ("HPD"), and PPD, and listed offenses. The warrant was issued by State Court Judge Brenda Bedsole Ricks.

On November 5, 2020, TPSO deputies surveilled the property from woods on the property. They observed Pines arrive in a white Honda Accord, exit the vehicle, and approach a brown Chevrolet Metro that was parked on the property. They observed Pines open the trunk of the vehicle and remove a red and black bag that was consistent with the packaging and appearance of controlled substances based on the deputies' law enforcement experience. Pursuant to the search warrant, the deputies approached Pines and identified themselves as law enforcement officers. Pines fled, and after a short pursuit, he was apprehended. While he was being apprehended, he threw a bag of suspected heroin from his possession.

Deputies seized the red and black canvas bag containing approximately 1,077 grams of suspected heroin, a small digital scale beside the bag, and approximately 54 grams of suspected heroin sitting on the scale. Their search of a gray Ford on the same property resulted in seizure of 91 grams of suspected heroin and a digital scale. Pines was in possession of keys for the Chevrolet Metro and the Ford at the time of his arrest. A field test for the presence of heroin taken from the substance on the scale tested positive.

Following the search and also on November 5, 2020, Sergeant C. Scott Jarreau of TPSO executed an affidavit in support of a warrant for the search of Pines' residence on Ard Lane. Jarreau reported that Narcotics Agents with TPSO, HPD, and special agents with the Department of Homeland Security ("DHS") had conducted a surveillance operation of Pines, who had been the center of an ongoing investigation as it relates to illegal drug trafficking and distribution. Jarreau attested that Surveillance Agents were able to observe PINES leave a residence at the believed to be address of 11448 Ard Lane in Hammond, Louisiana at approximately 9:16 a.m. on this date. Pines was observed leaving the residence and traveling in a white in color Honda car bearing license plate 847 DLI and traveled south on south baptist. After a short time passed, surveillance teams observed PINES travel around

Hammond, Louisiana and ultimately arrives at an address which is believed to be 17076 Douglas Oneil Road . . . . <u>Id.</u> Jarreau explained that the Douglas O'Neil address was subject to a search warrant and was being watched "due to information being given to investigating agents of large quantities of narcotics being stashed in abandoned vehicles located on this property." <u>Id.</u> Jarreau also attested that agents did in fact observe Pines approach the vehicles and retrieve an unknown package believed to be illegal controlled dangerous substances. Jarreau attested that Pines was found to be in possession of a large quantity of suspected narcotics and was taken into custody. He further attested that "[i]nformation given to law enforcement during this investigation is PINES keeps a substantial amount of narcotics at his home located on ARD Lane as well." State Court Judge Robert Morrison issued the search warrant for Pines' residence at Ard Lane. During the search of the property, law enforcement discovered and seized $16,505 and one digital scale. The currency was found under the cushions of the sofa in the living room and in the pocket of a garment hanging in the closet of Pines' bedroom.

After his arrest, Pines was interviewed by HSI investigators at the TPSO substation. He was advised of and waived his Miranda rights. He then stated that his purpose in visiting the Douglas O'Neil property was to retrieve heroin that he had stored there and that he would sell for profit. He acknowledged that the heroin found near his person at the time of his arrest and in both cars were his.[1]

Pines has moved to suppress, arguing that the warrants were not based on probable cause. He also argues that the confidential informants were acting as government agents at the time they obtained the information they later provided to the TPSO deputies, and thus their presence on the Douglas O'Neil Lane property constituted a warrantless search. The government opposes, arguing that the good faith exception to the exclusionary rule applies, because the officers executing the warrants acted in objective good faith in relying on the warrants' validity, and alternatively, that the warrants were supported by probable cause. The government also argues

---

[1] Rec. Doc. 49, 1-4.

that the confidential informants were not government agents, and did not conduct a search of the Douglas O'Neil Lane property, but instead were invited on to it. The government further contends that Pines does not have standing to challenge the search of his grandmother's property.

## APPLICABLE LAW

The Fourth Amendment to the Constitution of the United States protects individuals from unreasonable searches and seizures:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

It is well-settled that for the Fourth Amendment to apply, two threshold requirements must be met: first, the challenged conduct must be governmental; and second, the challenged conduct must constitute a "search" in violation of an individual's "reasonable expectation of privacy." Burdeau v. McDowell, 256 U.S. 465, 475 (1921); California v. Greenwood, 486 U.S. 35, 39 (1988). In analyzing whether governmental conduct has occurred, if the actor is a federal, state, or local government agent, the requirement is met. If the actor is a private citizen, it is not, and the Fourth Amendment is not implicated. Walter v. United States, 447 U.S. 649, 656 (1980). A gray area exists when there is no overt government action, but the government acquiesces in a private individual's action. United States v. Bazan, 807 F.2d 1200, 1202 (5th Cir. 1986).

Although the Fourth Amendment is silent on the suppression of evidence obtained in

violation thereof, "the prudential 'exclusionary' rule may be used to suppress evidence where doing so would "deter future Fourth Amendment violations." Davis v. United States, 564 U.S. 229, 236-37 (2011). "The exclusionary rule requires courts to suppress evidence seized on the basis of a warrant that is unsupported by probable cause." United States v. Pope, 467 F.3d 912, 916 (5th Cir. 2006). The rule "prohibits introduction at trial of evidence obtained as the result of an illegal search or seizure [and] excludes not only the illegally obtained evidence itself, but also other incriminating evidence derived from that primary evidence." United States v. Runyan, 275 F.3d 449, 466 (5th Cir. 2001) (citing Silverthorne Lumber Co. v. United States, 251 U.S. 385 (1920)). To pursue suppression under the exclusionary rule, an individual must show that he, personally, has a "legitimate expectation of privacy in the invaded place." U.S. v. Iraheta, 764 F.3d 455, 461 (5th Cir. 2014). He must establish: (1) "an actual, subjective expectation of privacy with respect to the place being searched" and (2) that the expectation "is one which society would recognize as objectively reasonable." Id. at 461.

The court applies a two-step test to determine whether to apply the exclusionary rule. United States v. Mays, 466 F.3d 335, 342–43 (5th Cir. 2006). First, the court asks whether the good-faith exception to the rule applies. Id. at 343. Second, if the good-faith exception does not apply, the court asks whether the warrant was supported by probable cause. Id. "If the good faith exception applies, no further analysis is conducted." United States v. Calmes, 608 Fed. Appx. 307, 308 (5th Cir. 2015). "Principles of judicial restraint and precedent dictate that, ... [the court] should not reach the probable cause issue if ... the good-faith exception" applies. United States v.

Massi, 761 F.3d 512, 525 (5th Cir.2014) (quoting United States v. Craig, 861 F.2d 818, 820 (5th Cir. 1988)). The Supreme Court of the United States has explained that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual circumstances in which exclusion will further the purpose of the exclusionary rule." United States v. Leon, 468 U.S. 897 (1984).

## ANALYSIS

### I. Initial "Intrusion" by Confidential Informants

Pines argues that the confidential informants were acting at the behest of law enforcement to achieve law enforcement's objectives, and thus that their presence on the O'Neil Lane property prior to the application for the warrants constituted governmental action subject to the Fourth Amendment. As such, Pines argues that the CIs conducted a warrantless search, and the evidence flowing from that – the observations that underpinned the subsequent warrant applications – must be excluded, thereby requiring the suppression of both warrants.

However, testimony adduced at the motion hearing established that the CI's did not go on to the property at the suggestion of law enforcement officers.[2] Further, the property in question, a large, rural lot that was commonly known as the site of drug activity, was a travel area, routinely open to visitors.[3] According to Lieutenant Marler, numerous friends, family, and drug traffickers

---

[2] Rec. Doc. 29, Transcr. 23.

[3] Id. at 22-23.

6

frequent the property, and many meetings are held there.[4] CI-1 was specifically noted to have access to the property.[5] Once Pines or another individual with access allowed the confidential informants on to his property, Pines "forfeited his privacy interest in those activities that were exposed to [the CIs]." United States v. Brathwaite, 458 F.3d 376, 380 (5th Cir. 2006) (quoting United States v. Davis, 326 F.3d 361, 366 (2d Cir.2003), cert. denied, 540 U.S. 908 (2003) and citing United States v. Lee, 359 F.3d 194, 201 (3d Cir. 2004), cert. denied, 543 U.S. 955 (2004) ("[I]f a defendant consents to the presence of a person who could testify about a meeting and is willing to reveal what occurs, the defendant relinquishes any legitimate expectation of privacy with respect to anything ... the testimony could cover.")).

Under the circumstances of this case, in which the CIs were granted access to the property that numerous people freely frequented, Pines did not have a reasonable expectation of privacy such that the informants' presence on the property was protected Fourth Amendment activity. Thus, the confidential informants' presence on the property does not constitute a search, no warrant was necessary, and it provides no basis to suppress the warrants for Douglas O'Neil Lane and Ard Lane.

## II. Douglas O'Neil Lane Warrant

Pines argues that the search of the property at Douglas O'Neil Lane violated his Fourth

---

[4] Id.

[5] Id.

Amendment rights, because the warrant was unsupported by probable cause. Thus, he argues that under the exclusionary rule, all fruits of the unconstitutional search, as well as the statements he made during the subsequent interrogation, must be excluded.

*Standing*

The government argues that Pines lacks standing to challenge the search or seizures at the Douglas O'Neal Lane property, because it belongs to his grandmother. In considering an individual's standing for purposes of the Fourth Amendment, courts consider whether the defendant has a possessory interest in the thing seized or the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation of privacy that it would remain free from governmental intrusion, whether he took normal precautions to maintain privacy, and whether he was legitimately on the premises. United States v. Ibarra, 948 F.2d 903, 906 (5th Cir. 1991), on reh'g, 965 F.2d 1354 (5th Cir. 1992).

The government argues that because the property was his grandmother's and because the cars were abandoned, Pines does not have a personal protected privacy interest in the property that would confer standing. In contrast, Pines argues that the property is "the seat" of his family, that various family members lived on it, and that he regularly visited it. He argues that, as a member of the family, he had the right to exclude non-family from the property. He also argues that he arranged for the cars to be placed on the property for storage.

The government does not challenge that the property was Pines' family's home, and that Pines had the right to exclude non-family from the property. Pines was the only person with the

keys to the cars where the drugs were stored.[6] Pines was in possession of those keys when he was arrested.[7] Lieutenant Marler testified that Pines regularly visited the cars.[8] In addition, Officer McBee's affidavit in support of the first warrant indicates that Pines returned to the cars multiple times per day.[9]

This evidence establishes that the cars were not abandoned in the sense argued by the government and that Pines had a privacy interest in the cars. Pines had what appears to be exclusive control over the cars on the property and "took normal precautions to maintain privacy." Accordingly, the court finds that Pines has standing to challenge the Douglas O'Neil Lane warrant.

***Good Faith Exception***

Because the challenged evidence was obtained pursuant to a search warrant, the court's first task is to determine whether the good faith exception to the exclusionary rule applies. United States v. Pena–Rodriguez, 110 F.3d 1120, 1129 (5th Cir.1997). The good-faith exception applies, and the evidence is admissible, "if the officers obtained the evidence 'in objectively reasonable good-faith reliance upon a search warrant,' ... 'even though the affidavit on which the warrant was based was insufficient to establish probable cause.'" Pope, 467 F.3d at 916 (quoting

---

[6] Rec. Doc. 29, Transcr. 16.

[7] Rec. Doc. 21-2, 25, Invest. Rept. 3

[8] Rec. Doc. 29, Transcr. 16.

[9] Rec. Doc. 21-2, 4.

United States v. Satterwhite, 980 F.2d 317, 320 (5th Cir.1992)). "The 'good faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.'" Id. (quoting Leon, 468 U.S. at 922 n. 23). The court "may examine all of the circumstances surrounding the issuance of the warrant." Id. (quotation and citation omitted). The court will uphold an officer's good-faith reliance on a warrant unless one of four conditions apply:

> (1) the issuing-judge was misled by information on an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) the issuing-judge wholly abandoned his judicial role in such a manner that no reasonably well trained officer should rely on the warrant; (3) the underlying affidavit is bare bones (so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable); or (4) the warrant is so facially deficient ... that the executing officers cannot reasonably presume it to be valid.

Mays, 466 F.3d at 343 (quoting United States v. Gibbs, 421 F.3d 352, 358 (5th Cir. 2005)).

In this case, Pines argues first that Officer McBee misled the issuing judge, by including inaccurate criminal history relating to rape and possession of a firearm. In evaluating this argument, the court applies the standard articulated in Franks v. Delaware, 438 U.S. 154, "which requires a defendant to show that '(1) the allegations in a supporting affidavit were deliberate falsehoods or made with a reckless disregard for the truth, and (2) the remaining portion of the affidavit is not sufficient to support a finding of probable cause.'" Id. (quoting United States v. Brown, 298 F.3d 392, 395 (5th Cir. 2002)).

Officer McBee's testimony reflects that the inclusion of the rape and gun charge in Pines' criminal history was not a deliberate falsehood, but due to the fact that they were included in the

10

Sheriff's internal database.[10] They were not part of the NCIC database (upon which defendant relied) because at the time of the rape charge, Pines was already incarcerated at the Sheriff's office, and in the case of the firearm assault, the complainant declined to pursue charges.[11] Thus, the appearance of the charges on one report but not the other is a result of differing reporting standards, not deliberate falsehood. Further, even if those references were excluded, it would not affect the probable cause analysis. The criminal history was included to demonstrate Pines' extensive history of drug crimes, so the exclusion of two non-drug crimes are superfluous and irrelevant.

Pines also contends that the affidavit for the warrant was so lacking in indicia of probable cause as to render an official belief in its existence entirely unreasonable. Specifically, Pines argues that the affidavit does not sufficiently demonstrate the reliability, or the basis for knowledge, of either informant.

However, the warrant application reflects that it was based on the personal observations of the informants, who had lengthy histories as reliable informants with three agencies involved in the investigation. Lieutenant Marler advised the affiant that the confidential informant was a "proven and reliable" source, who had "provided information in the past which has led to many

---

[10] Rec. Doc. 29, Transcr. 41.

[11] Id.

11

arrests and conviction[s] as well [as] numerous drug seizures."[12] The confidential informant told Officer McBee that he had personally observed the defendant "in possession of a large quantity of heroin."[13] A second "proven and reliable" confidential informant corroborated this information.[14]

Considering the foregoing, the court finds that the affidavit sufficiently demonstrates the reliability and basis for knowledge of the informants such that official belief in the existence of probable cause was not entirely unreasonable. Pines has failed to establish that any of the four conditions required to deny the good-faith exception are present. Accordingly, the court applies the good faith exception and does not reach the question of probable cause.

### III. Ard Lane Warrant

Pines also seeks to suppress evidence from the search of his Ard Lane home, arguing that the Ard Lane search was derivative of the unlawful search at Douglas O'Neil Lane. The court's conclusion that the good faith exception applies to Douglas O'Neil Lane warrant renders null that argument. However, Pines also argues that the Ard Lane search was independently unconstitutional because it was not supported by probable cause. Again, because this is a challenge to a search warrant, the court first considers whether the good faith exception to the

---

[12] Rec. Doc. 21-2, 4, PC Affidavit of Brandon McBee.

[13] Id.

[14] Id.

exclusionary rule applies. Pena–Rodriguez, 110 F.3d at 1129.

In arguing that the good faith exception is inapplicable to the Ard Lane warrant, Pines again contends that the issuing court was misled by the affiant in reckless disregard for the truth, and the affidavit was so lacking in indicia of probable cause that reliance on it was entirely unreasonable. Specifically, Pines argues that the affiant misled the court because he did not disclose that a warrant had been issued for Pines' grandmother's property because her property, as opposed to Pines' residence, was where Pines stored and packaged heroin. Pines contends that this information was omitted because it would undermine, rather than bolster, the case for probable cause to search his home, if the issuing judge knew the heroin had already been found at another location. Pines also contends that the affiant recklessly disregarded the truth by supplying a vague assertion that "information given to law enforcement" suggests that "Pines keeps a substantial amount of narcotics at his home located on Ard Lane as well."

The affidavit in support of the Ard Lane warrant recited that subsequent to surveillance of Jimmelle Pines, who was the center of an ongoing drug trafficking investigation, agents observed Pines leave a residence on Ard Lane and travel to a property on Douglas O'Neil Lane, for which a judge had previously issued a search warrant.[15] The affidavit further stated that the Douglas O'Neil Lane address was under surveillance due to information indicating that large quantities of narcotics were stashed in abandoned vehicles on the property. It further stated that

---

[15] Rec. Doc. 21-2, 11 PC Aff. of Sgt. Scott Jarreau.

agents observed Pines retrieve a package from a vehicle, that thereupon they attempted to apprehend him, and that Pines attempted to flee before being apprehended.[16] A large quantity of illegal narcotics was found in another vehicle on site.[17] "Information given to law enforcement during this investigation [was] that Pines keeps a substantial amount of narcotics" at his Ard Lane home.[18] The affiant further stated that he believed that Pines also stashed illegal drugs at his Ard Land home.[19]

      Considering the foregoing assertions in the affidavit, the court does not find that any of the conditions that would vitiate the good faith exception are present. It does not appear the issuing judge was misled by information that the affiant knew was false or based upon a reckless disregard of the truth. The omission of the fact that a warrant had been issued for Pines' grandmother's property as a potential location of drugs, and that drugs had been found there, does not mean that Pines' residence was eliminated as a potential stash site – he could keep drugs in both places. Indeed, the affidavit states that the affiant believes that the Ard Lane residence is "*another* area where Pines stashes illegal controlled dangerous substances," id. (emphasis added), implying that drugs had previously been found in another location, and that multiple locations were possible. The assertion that "information given to law enforcement during this

---

[16] Id.

[17] Id.

[18] Id.

[19] Id.

investigation is that Pines keeps a substantial amount of narcotics at his home located on Ard Lane as well," is not too vague considering the totality of the circumstances. At the time the affidavit was made, the information previously given to law enforcement had correctly borne out that Pines stored heroin in abandoned cars on Douglas O'Neil Lane, and an arrest had been made as a result. The court thus finds that the defects alleged by Pines do not render the warrant was so lacking in indicia of probable cause that belief in its existence was unreasonable.

In summary, the court finds that the evidence Pines seeks to suppress was obtained in objectively reasonable good-faith reliance upon the search warrants. Accordingly,

**IT IS HEREBY ORDERED** that the **Motion to Suppress** (Rec. Doc. 21) filed by defendant, Jimmelle Pines, is **DENIED**.

New Orleans, Louisiana, this __6th__ day of October, 2021.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**